**Debevoise & Plimpton LLP**
919 Third Avenue
New York, NY 10022
+1 212 909 6000

December 9, 2020

**By ECF**

Honorable William H. Pauley III
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1920
New York, NY 10007

      Re: *United States v. Sidney Bright*, Case No. 06-CR-00242 (WHP)

Dear Judge Pauley:

      We represent Sidney Bright *pro bono* and respectfully write in response to the Government's letter dated December 2, 2020 (ECF No. 164). We urge the Court to grant Mr. Bright's motion for a sentence reduction pursuant to the First Step Act because, contrary to the argument by the Government, Mr. Bright is no longer a danger to society and the 18 U.S.C. § 3553(a) factors argue in favor of this Court using its discretion to resentence Mr. Bright. In the alternative, we ask that the Court grant Mr. Bright's motion for compassionate release. Given the unprecedented pandemic, Mr. Bright's health conditions, which put him at risk for serious complications from COVID-19, create an extraordinary and compelling basis for his release.

**I.  The Court Should Exercise Its Discretion To Grant A Sentence Reduction**.

      The Government does not dispute that Mr. Bright is eligible for resentencing on Count One as it qualifies as a "covered offense" under the First Step Act. Gov. Lt. 7. The Government likewise concedes that the applicable mandatory minimum should be determined by the drug quantity found by the jury. Gov. Lt. 7. The Government and Defendant differ on whether (A) Mr. Bright presents a danger to the public; (B) resentencing would provide Mr. Bright with a "unwarranted benefit"; (C) further downward departure from the Guidelines range based on acquitted conduct is appropriate; and (D) the § 3553(a) factors favor release.

      **A.  Mr. Bright Does Not Present A Danger to Society**.

      Mr. Bright has already served a lengthy sentence and put his time in prison to good use. He has maintained a clean disciplinary record for the vast majority of his time in prison, with the exception of one minor incident in 2007. *See* Def.'s Lt. Ex. C, Inmate Progress Report; *see also United States v. Yu*, No. 90 Cr. 47-6 (AT), 2020 WL 6873474, at *5 (S.D.N.Y. Nov. 23, 2020) ([D]efendant's "clean disciplinary record for the last eight years . . . demonstrates that he is unlikely to commit future criminal acts or pose a danger to the community."). The prison officials in the position to best assess whether Mr. Bright presents a risk to society have concluded that his dedication to employment and coursework while incarcerated "is indicative of his desire to live [a] responsible lifestyle upon his release to the community." *See* Def.'s Lt. Ex. E, Case Manager Best Letter. Contrary to the Government's suggestion, the record makes clear that Mr. Bright has more than just "begun down the path to rehabilitation." *Cf*. Gov. Lt. 8.

**B.     The Second Circuit Has Rejected the Government's Argument that Granting Resentencing Would Provide Mr. Bright With An "Unwarranted Benefit."**

In *United States v. Johnson,* the Second Circuit rejected the same argument that the Government makes here—that resentencing provides a defendant with an "unwarranted benefit," on the assumption that had he been sentenced today the charging document would reflect a higher statutory threshold quantity and the jury would have made a finding based on this higher drug quantity.  961 F.3d 181, 192 (2d Cir. 2020).  In *Johnson*, the Government's argument was dismissed because it rested on the disputable "assumption that there is a knowable set of pre-Fair Sentencing Act defendants who would have received the same sentence regardless of the Fair Sentencing Act." *Id.*  Put differently, the Second Circuit declined to grant "the government the hypothetical 'do-over' it seeks," making plain that the Government's assumption cannot be entertained, because "[i]t would have been up to the grand jury, not the government, to choose whether to indict [the Defendant] for an offense involving that amount.  And . . . it would have been up to a jury — not the government — to decide whether the greater amount had been proved beyond a reasonable doubt." *Id.*

In seeking to remedy a sentencing regime that was too harsh and disparately impacted Black defendants, Congress "upset the government's *ex ante* expectations about what sentences certain defendants would serve." *Id.* at 193.  Congress therefore provided district courts with the discretion to determine whether a sentence reduction was warranted.  For Mr. Bright, the exercise of such discretion is appropriate.

**C.     The Court Should Weigh Changes to the Relevant Statutory Framework and Guidelines Range.**

We recognize that the Court may weigh the acquitted conduct in deciding whether to resentence Mr. Bright, but in light of the revised sentencing framework, we ask the Court to exercise its discretion and depart downward from the current Guidelines. *See United States v. Ortiz*, No. 19-3073, 2020 WL 6280878, at *2 (2d Cir. Oct. 27, 2020) ("[I]t is left to the district court's discretion what other factors [beyond those that flow from Sections 2 and 3 of the Fair Sentencing Act] are relevant as it determines whether and to what extent to reduce a sentence.") (internal citations omitted).  In 2011, this Court saw fit to depart downward from a life sentence, recognizing the potential for Mr. Bright's rehabilitation.  Sentencing Tr. 31:10-11.  At the time, the Guidelines range on Count One was 360 months to life and the mandatory minimum was twenty years.  These anchor points have since shifted; the applicable Guidelines range is now 292–365 months and the statutory minimum is ten years. *See* Def.'s Lt. 6.  Notwithstanding the fact that the Court did not impose the mandatory minimum at sentencing, statutory benchmarks "likely have an anchoring effect on a sentencing judge's decision making." *See United States v. Aller*, No. 00-cr-977 (JGK), 2020 WL 5494622, *14 (S.D.N.Y. Sept. 11, 2020) (citing *United States v. Smith*, 954 F.3d 446, 452 (1st Cir. 2020); *see also* Resentencing Tr. 29:14-20, 31:2-10, *United States v. Aller*, No. 00-cr-977 (JGK) (S.D.N.Y. Nov. 17, 2020) (reducing defendant's sentence on drug-trafficking count calculated under murder cross-reference U.S.S.G. § 2D1.1(d)(1) to time served in recognition of defendant's rehabilitation, conditions of confinement, and other mitigating factors).  We ask that the Court exercise its discretion and reduce Mr. Bright's sentence to time served in light of the new sentencing benchmarks and Mr. Bright's tireless efforts toward rehabilitation while incarcerated.

### D. The Relevant § 3553(a) Factors Weigh Strongly In Favor Of Relief.

In weighing the § 3553(a) factors, the Court's responsibility is to impose a sentence that is "sufficient, but not greater than necessary." *See* § 3553(a). As detailed above, Mr. Bright no longer presents a danger to society and, as detailed in our opening letter, imposing a reduced sentence is consistent with the statutory goals of punishment, *see* Def.'s Lt. 7, and consistent with the Congressional intent in the First Step Act of reducing over-incarceration. In view of this legislative intent, courts in this circuit have held that the First Step Act should be construed broadly. *See United States v. Powell*, No. 3:99-cr-264-18 (VAB), 2019 WL 4889112, at *4 (D. Conn. Oct. 3, 2019) (citing *United States v. Rose*, 379 F. Supp. 3d 223, 229 (S.D.N.Y. 2019)). As discussed further below, the § 3553(a) factors related to appropriate medical care and the conditions of confinement also argue in favor of release given the unprecedented COVID-19 pandemic.

Mr. Bright has no right to be present at oral argument, but the Court is granted wide discretion under § 404 of the First Step Act, and we think that hearing directly from Mr. Bright may assist the Court in assessing the extent of his rehabilitation and his hopes and plans if he is released. *See* First Step Act of 2018, Pub. L. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018); *see also* Def.'s Lt. 1 n1.

## II. Mr. Bright's Health Is An Extraordinary and Compelling Reason for Release.

As numerous courts in this district and across the country have concluded, the threat of COVID-19 constitutes an extraordinary and compelling reason for compassionate release of prisoners who have pre-existing medical conditions that put them at heightened risk of serious or fatal complications. *See United States v. Gonzales*, Nos. 12-CR-326 (JMF), 05-CR-1292 (JMF), 2020 WL 2766048, at *1 (S.D.N.Y. May 28, 2020) (granting home confinement to forty-five year old defendant suffering from hypertension and obesity, convicted of several drug crimes, including one committed while on supervised release that "capped a career of crime spanning from 1997-2011"); *see also United States v. Pena*, 459 F. Supp. 3d 544, 550 (S.D.N.Y. 2020) (granting compassionate release for defendant with hypertension and hyperlipidemia whose crimes were "heinous"); *United States v. Maya Arango*, No. 15-CR-104 (JMF), 2020 WL 3488909, at *2 (S.D.N.Y. June 26, 2020) (granting compassionate release for defendant who was a "very significant figure in the drug trafficking trade" given his rehabilitation efforts and medical conditions including hyperlipidemia).

Courts have recognized that because the conditions of confinement facilitate the spread of the virus, mitigating the death toll for incarcerated populations requires releasing as many people as possible. *See, e.g.*, *United States v. Torres*, 464 F. Supp. 3d 651, 665 (S.D.N.Y. 2020). The conditions at FCI Otisville, where Mr. Bright is currently housed, create precisely this type of risk. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 335 (S.D.N.Y. 2020) (granting compassionate release for defendant and recognizing that "inmates at Otisville live in close quarters [where] social distancing is impracticable if not impossible, making it difficult for [defendant] to protect himself from the spread of this dangerous and highly contagious virus"); *Yu*, 2020 WL 6873474, at *4 (same). The current reported low incidence of COVID-19 at FCI Otisville is not evidence that the threat is absent. *See United States v. Amarrah*, 458 F. Supp. 3d 611, 618 (E.D. Mich. 2020) (COVID-19's ability to "spread[] asymptomatically" means that "the Court and the prison system can take no comfort in a lack of confirmed cases."). It is well

documented that crowded prisons present "an outsized risk that the COVID-19 contagion, once it gains entry, will spread." *United States v. Hernandez*, 451 F. Supp. 3d 301, 304 (S.D.N.Y. 2020).

### A. The Risk Associated with Mr. Bright's Underlying Medical Conditions Must Be Evaluated Holistically.

Contrary to the Government's argument, *see* Gov. Lt. 10-11, there is scientific evidence that Mr. Bright's underlying health conditions, including complicated hypertension, hyperlipidemia, sickle cell trait, and borderline anemia, place him at heightened risk of severe or even fatal complications from the coronavirus. With respect to hypertension, "[w]hat the scientific community knows with relative certainty is that hypertension is one of the most common comorbidities in people who experience severe cases of COVID-19." *United States v. Salvagno*, No. 5:02-CR-51 (LEK), 2020 WL 3410601, at *12 (N.D.N.Y. Apr. 23, 2020) (granting compassionate release to defendant with hypertension with six years remaining on a twenty-five year sentence). Mr. Bright also has sickle cell trait. A BOP medical official has warned that this underlying condition increases Mr. Bright's risk of contracting COVID-19 and doctors have warned that those who have this trait should take extra precautions to prevent exposure to the virus.[1] *See* Def.'s Lt. Ex. A.

The CDC has further advised that the "more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19."[2] It is therefore appropriate to evaluate the risk associated with Mr. Bright's health conditions holistically, as these conditions taken together further increase the likelihood of severe illness or death from the coronavirus. *Cf*. Gov. Lt. 10-11. In short, a high-risk inmate—like Mr. Bright—who contracts the virus while incarcerated "will face challenges in caring for himself" that justify his immediate release. *Hernandez*, 451 F. Supp. 3d at 304 (releasing the defendant to home confinement based primarily on his moderate asthma).

### B. The Relevant § 3553(a) Factors Favor Compassionate Release.

When imposing its original sentence, the Court could not have predicted the onset of a deadly, global pandemic to which incarcerated populations generally, and Mr. Bright in particular, would be acutely vulnerable. *See Zukerman*, 451 F. Supp. 3d at 336 (noting the Court did not "intend" for its original sentence to "include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic") (internal citations omitted). Keeping Mr. Bright in prison, an environment highly conducive to the spread of COVID-19, is punishment harsher than necessary to promote respect for the law and deter him and others from similar conduct. It is also inconsistent with the need to impose a sentence that provides adequate medical care, including access to preventive measures. *See* 18 U.S.C. § 3553(a)(2)(D).

---

[1] Usha Lee McFarling, *Millions of Americans carry the sickle cell trait, many without knowing it. Could they be at risk for severe Covid-19?*, STAT NEWS (Sep. 3, 2020) https://www.statnews.com/2020/09/03/millions-carry-sickle-cell-trait-could-they-be-at-risk-for-severe-covid19/.

[2] CDC, *People with Certain Medical Conditions* (Updated Dec. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#serious-heart-conditions.

Mr. Bright acknowledges his crimes were serious, but he has been punished sufficiently. As several courts in this jurisdiction have recognized, the COVID-19 pandemic has also made conditions of confinement "harsher and more punitive than would have otherwise been the case" due to the "onerous lockdowns and restrictions" required to combat the spread of the virus in federal prisons. *See United States v. Rodriguez*, No. 00 Cr. 761-2 (JSR), 2020 WL 5810161, at *3 (S.D.N.Y. Sept. 30, 2020); *United States v. Mitchell*, 13 Cr. 70, 2020 WL 6193860, at *1 (S.D.N.Y. Sept. 1, 2020).  As a result of two hospital visits for a serious bacterial infection, which may have resulted in kidney damage, Mr. Bright has also had to remain in quarantine for over three weeks.  In balancing the factors under § 3553(a), the Court should weigh both the harsh conditions, which have reduced the opportunities for meaningful work and programming, as well as the risk to Mr. Bright's mental and physical well-being caused by his being incarcerated during a pandemic. *Rodriguez*, 2020 WL 5810161, at *3.  Factoring in good time credit, Mr. Bright has served over sixteen and a half years on his sentence.  His crimes, while serious, should not bar him from obtaining this requested relief in light of his extraordinary rehabilitation, his underlying medical issues, and the current conditions of confinement. *See Zukerman*, 451 F Supp. 3d at 336 (granting compassionate release for defendant whose crimes were "egregious" noting that "[t]he severity of [the defendant's] conduct remains unchanged, [but] [w]hat has changed . . . is the environment where [the defendant] is serving his sentence").

## CONCLUSION

Working with unrelenting dedication to grow from his past mistakes, Mr. Bright has cultivated the necessary skills and emotional resources to become a productive member of society.  The First Step Act grants district courts broad discretion to reduce sentences imposed under the excessively harsh penalty structure for crack cocaine related offenses that Congress has now rejected.  In recognition of Mr. Bright's efforts, the shift in the applicable sentencing framework, and the risk of severe or even fatal complications he faces if infected with the coronavirus, we ask the Court to reduce Mr. Bright's sentence to time served.[3]

Dated: December 9, 2020               RESPECTFULLY SUBMITTED

                                      /s/ Elisabeth Shane
                                      Elisabeth Shane (eashane@debevoise.com)
                                      Jillian Tancil (jtancil@debevoise.com)
                                      DEBEVOISE & PLIMPTON LLP
                                      919 Third Avenue
                                      New York, New York 10022
                                      (212) 909-6000
                                      *Attorneys for Defendant Sidney Bright*

CC: AUSA Kiersten Ann Fletcher (via ECF)

---

[3] If released, Mr. Bright plans to live with his mother, Francis Bright. *See* Def.'s Lt. 9.  Therefore, there is no cause to delay release to make "appropriate living arrangements." *Cf.* Gov. Lt. 12. Conditions at FCI Otisville may deteriorate quickly. We ask that if the Court decides to grant release, no delay be mandated.  With regard to the form of the court's order, Mr. Bright does not express an opinion, other than to request the government's proposed language be revised to allow for an order pursuant to 18 U.S.C. § 3582(c)(1)(a).